**UNITED STATES DISTRICT COURT** **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| LORI EGAN and GEORGE EGAN, *as next friend of E.E., a minor*, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:26-CV-073 |
| | § | |
| BRIDGE CITY INDEPENDENT SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Defendant Bridge City Independent School District's ("BCISD") Motion to Dismiss (#12). Plaintiff E.E.'s ("E.E.") parents, George and Lori Egan, filed a Response (#20) on her behalf. BCISD filed a Reply (#24). Having considered the motion, the submissions of the parties, the record, and the applicable law, the court is of the opinion that the motion should be granted in part and conditionally granted in part.

I. Background

E.E. is currently 12 years old. She is a student at Bridge City Intermediate School ("BCIS") in Bridge City, Texas. E.E. has been diagnosed with autism and attention deficit hyperactivity disorder ("ADHD"). This lawsuit arises from injuries E.E. allegedly sustained when she fell from a swing set on the school playground at recess.

E.E. first alleges she has autism and ADHD. She asserts that she used the playground's swing set as an accommodation to help regulate her emotions and sensory input needs, as well as to relieve her stress. At some time prior to E.E.'s injury, BCISD School Board authorized the purchase of the swing set for BCIS's playground. By September 2023, however, it, along with

other portions of the playground, had fallen into "visible disrepair." Some the swings had broken seats and others had chains detached. E.E. asserts that BCISD failed to ensure that a reasonable maintenance schedule was in place, even though the state of the swing set was well known by the staff and students alike. Additionally, BCISD did not post warnings about, remove, or schedule maintenance for the swing set.

E.E. alleges that on September 12, 2023, she was using the swing set while "Ms. Clark," a teacher, was supervising the playground during recess. As she was swinging, the rubber seat of E.E.'s swing split in half because it allegedly had dry rot. E.E. fell to the ground. She "landed in a position similar to sitting,"—her knees were bent and her ankles were stacked under her knees.

E.E. alleges that, after her fall, Katie Sanders, an instructional coordinator, and Kacie Granger ("Granger"), a nurse, helped her. They instructed her to roll on to her back and assisted her into a wheelchair. Granger took E.E. to the nurse's office for an assessment, applied ice to her ankles, and then called E.E.'s parents. An ambulance arrived and took E.E. to a local hospital.

E.E. avers that she suffered bilateral ankle fractures. Both her ankles were broken in multiple places. E.E. was transferred to Texas Children's Hospital in Houston, Texas, and immediately underwent surgery on her right ankle. A few days later, she underwent surgery on her left ankle. Following her discharge, doctors told E.E. not to bear weight on either leg, and she was confined to a bed or wheelchair for at least three months. During that time, she struggled with normal day-to-day activities and her mobility was limited.

In January of 2024, E.E. returned to school. She wore ankle braces, required assistance to carry things, and received other accommodations. To aid her recovery, E.E. was prescribed 18 physical therapy sessions, but she completed only 3. By Spring 2024, E.E. could walk again with the help of a walker. Around that same time, however, she fell at home and suffered a broken right femur and broken right wrist, leading to more surgeries. She contends that her bones were more fragile because her bone density decreased as a result of her prior injuries.

On February 27, 2026, E.E. filed her Original Complaint (#1) in this court. She thereafter filed the First Amended Complaint (#8), now the operative complaint, on June 11, 2026.

## II. Analysis

### A. Motion to Dismiss Standard

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests only the formal sufficiency of the statement of a claim for relief and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"); *Jenkins v. Tahmahkera*, 151 F.4th 739, 747 (5th Cir. 2025); *Spano ex rel. C.S. v. Whole Foods, Inc.*, 65 F.4th 260, 262 (5th Cir. 2023) (quoting *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018)). Such a motion is "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020);

*accord Damond v. City of Rayville*, 127 F.4th 935, 938 (5th Cir. 2025); 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1356 (Rev. 4th ed. 2026). In ruling on such a motion, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in favor of the plaintiff. *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (citing *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023)); *see Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678-79). The court, however, does not "strain to find inferences favorable to the plaintiff[]" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004); *accord Damond*, 127 F.4th at 938 ("A claim is . . . frivolous when it 'lacks an arguable basis either in law or in fact.'" (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989))).

"[T]he plaintiff's complaint [must] be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged." *Oscar Renda Contracting, Inc. v. Lubbock*, 463 F.3d 378, 381 (5th Cir. 2006) (citing *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989)); *Damond*, 127 F.4th at 938. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Cambric v. City of Corpus Christi*, 170 F.4th 321, 324 (5th Cir. 2026); *Doe as Next Friend Doe v. Jewel*, 151 F.4th 236, 244 (5th Cir. 2025). "[W]here the well-pleaded facts [of a complaint] do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *De Leon v. Munoz*, No. 24-40215, 2025 WL 957500, at *7 (5th Cir. Mar. 31, 2025) (alterations in original) (quoting *Iqbal*, 556 U.S. at 678); *accord Hernandez v. Causey*, 124 F.4th 325, 331 (5th

Cir. 2024) (quoting *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019)), *cert. denied*, 145 S. Ct. 1930 (2025). Hence, "a complaint's allegations 'must make relief plausible, not merely conceivable, when taken as true.'" *De Leon*, 2025 WL 957500, at *7 (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009)); *see Damond*, 127 F.4th at 937-38 (noting that a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" (quoting *Iqbal*, 556 U.S. at 678)).

"A motion to dismiss under Rule 12(b)(6) is viewed with disfavor and is rarely granted." *Hodge*, 90 F.4th at 843 (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Collins*, 224 F.3d at 498; *accord Blankenship v. Buenger*, 653 F. App'x 330, 334 (5th Cir. 2016) (noting that at the 12(b)(6) stage the court's "task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success" (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010))). "In other words, a motion to dismiss an action for failure to state a claim 'admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts.'" *Ramming*, 281 F.3d at 161-62 (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992)); *accord Colonna v. LoanDepot.com LLC*, No. 3:24-CV-0376-X, 2024 WL 3733362, at *1 (N.D. Tex. Aug. 7, 2024).

A Rule 12(b)(6) motion to dismiss must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure. *Twombly*, 550 U.S. at 555. Accordingly, a district court

should not dismiss a complaint for failure to state a claim unless a plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *accord Damond*, 127 F.4th at 937; *Benfer v. City of Baytown*, 120 F.4th 1272, 1279 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1313 (2025); *see Hikma Pharm. USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580, 589-90 (2026). "Facial plausibility is satisfied 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Benfer*, 120 F.4th at 1279 (quoting *Terwilliger v. Reyna*, 4 F.4th 270, 279 (5th Cir. 2021)); *accord Damond*, 127 F.4th at 937; *Hamilton v. Dallas County*, 79 F.4th 494, 499 (5th Cir. 2023).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Walker*, 938 F.3d at 735 (quoting *Iqbal*, 556 U.S. at 678); *accord Hikma Pharm. USA Inc.*, 608 U.S. at 1399; *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 291 (2025). "Factual allegations that are 'merely consistent with a defendant's liability[] stop[] short of the line between possibility and plausibility of entitlement to relief,' and are inadequate." *De Leon*, 2025 WL 957500, at *7. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Watts v. Thomas*, No. 25-10783, 2026 WL 116672, at *1 (5th Cir. Jan. 15, 2026) (quoting *Iqbal*, 556 U.S. at 678); *accord McMillian v. City of Aberdeen,* No. 25-60587, 2026 WL 1433944, at *1 (5th Cir. May 21, 2026) ("[Courts] do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." (quoting *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020))); *Damond*, 127 F.4th at 938. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*,

556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *accord Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 243 (5th Cir. 2021) ("The court disregards bare assertions of collective responsibility, unsupported by concrete factual allegations.").

Generally, at the 12(b)(6) stage, a plaintiff is simply required to inform the defendant of the factual basis of her complaint in order to avoid dismissal for failure to state a claim. *See Johnson v. City of Shelby*, 574 U.S. 10, 11-12 (2014) (citing FED. R. CIV. P. 8(a)(2)); *Groden v. City of Dallas*, 826 F.3d 280, 283 (5th Cir. 2016). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *Wells v. Tex. Tech Univ.*, No. 24-10518, 2025 WL 673439, at *2 (5th Cir. Mar. 3, 2025). In other words, to state a cognizable cause of action, the complaint must allege sufficient facts to "nudge" the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *accord Hikma Pharm. USA Inc.*, 608 U.S. at 1399.

B. E.E.'s Claims

E.E. sets forth the following claims arising from the events described above: (1) her constitutional rights were violated under The Civil Rights Act of 1871, 42 U.S.C. § 1983; (2) she was subject to disparate treatment under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 749 ("Section 504"), and under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 ("ADA"); and (3) BCISD failed to accommodate her disability under Section 504 and the ADA.

1. Section 1983 Claim

BCISD first seeks the dismissal of E.E.'s § 1983 claim.[1] Section 1983 creates a private right of action for redressing the violation of federal law by those acting under color of state law. *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 171 (2023); *Manuel v. City of Joliet*, 580 U.S. 357, 362 (2017); *Brown v. Pouncy*, 93 F.4th 331, 333 (5th Cir. 2024). Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983; *Connick v. Thompson*, 563 U.S. 51, 60 (2011). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Singleton v. Casanova*, No. 22-50327, 2024 WL 2891900, at *4 (5th Cir. June 10, 2024); *Bradley*

[1] In her response, E.E. requests that the court dismiss her § 1983 claim without prejudice under Federal Rule of Civil Procedure 41(a)(1)(A). Under Rule 41, a plaintiff may dismiss an action without a court order by filing:

> (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
> (ii) a stipulation of dismissal signed by all parties who have appeared.

FED. R. CIV. P. 41(a)(1)(A). In interpreting this rule, the United States Court of Appeals for the Fifth Circuit has long held that "[b]oth of Rule 41(a)'s subparts speak solely of dismissing 'an action.'" *Kipp Flores Architects, L.L.C. v. AMH Creekside Development L.L.C.*, 188 F.4th 826, 833-34 (5th Cir. 2026); *Exxon Corp. v. Maryland Cas. Co.*, 599 F.2d 659 (5th Cir. 1979) ("Rule 41(a) refers to [d]ismissal of an 'action.'"). Thus, the court denies E.E.'s request because she seeks the dismissal of only a single claim, not the whole action. If E.E. desired to remove her § 1983 claim alone, she should have used another mechanism—such as an amended complaint under Federal Rule of Civil Procedure 15.

Nevertheless, E.E. appears to have abandoned her § 1983 claim by failing to defend it in her response. *See Macias v. Texas*, No. 2:23-CV-00043, 2024 WL 1174178, at *5 (S.D. Tex. Mar. 18, 2024) (finding that the plaintiffs waived an issue that they did not raise "in response to the motions to dismiss").

*v. Sheriff's Dep't St. Landry Par.*, 958 F.3d 387, 395 n.39 (5th Cir. 2020); *see DeVillier v. Texas*, 601 U.S. 285, 291 (2024).

A claim under § 1983 has two foundational elements: "a violation of the Constitution or of federal law, and . . . that the violation was committed by someone acting under color of state law." *Webb v. Town of St. Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (quoting *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019)); *accord Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021); *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 687-88 (5th Cir. 2017). A § 1983 complainant must support her claim with specific facts and may not simply rely on conclusory allegations. *Baughman v. Hickman*, 935 F.3d 302, 310 (5th Cir. 2019) (citing *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009)).

a. State-Created Danger

E.E. alleges her constitutional rights violation under the state-created danger theory of liability. This theory, however, is not a viable theory of liability in the Fifth Circuit. *Fisher v. Moore*, 73 F.4th 367, 369 (5th Cir. 2023); *Doe ex rel. Magee v. Covington Cnty. School Dist. Ex rel. Keys*, 675 F.3d 849, 864 (5th Cir. 2012); *Piotrowski v. City of Houston*, 237 F.3d 567, 584 (5th Cir. 2001) (holding that the Fifth Circuit "[has] never adopted that theory"). The Fifth Circuit adopted this theory briefly in 2025 but shortly thereafter vacated its decision in 2026. *Sterling v. City of Jackson*, 159 F.4th 361 (5th Cir. 2025), *reh'g en banc granted, opinion vacated*, 167 F.4th 806 (5th Cir. 2026), *and on reh'g en banc*, 190 F.4th 391 (5th Cir. 2026).

The state-created danger theory is an "exception to the general rule that [the] government has no duty under the Due Process Clause to protect people from privately inflicted harms." *Fisher*, 73 F.4th at 368-69. Under this theory, "a state actor may be liable under § 1983 if the

state actor created or knew of a dangerous situation and affirmatively placed the plaintiff in that situation." *Doe ex rel. Magee*, 675 F.3d at 864 (citing *Carlton v. Cleburne County,* 93 F.3d 505, 508 (8th Cir. 1996)).

While the Fifth Circuit does not recognize this doctrine, the court has explained that to establish liability under this theory, a plaintiff must show that the defendants (1) "used their authority to create a dangerous environment for the plaintiff" and (2) "acted with deliberate indifference to the plight of the plaintiff." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 537-38 (5th Cir. 2003); *Fisher*, 73 F.4th at 372. To establish deliberate indifference, the plaintiff must show that: (1) "[t]he environment created by the state actors [is] dangerous"; (2) "they must know it is dangerous"; and (3) "they must have used their authority to create an opportunity that would not otherwise have existed." *Piotrowski*, 237 F.3d at 585 (internal citations and quotation marks omitted); *accord Fisher*, 73 F.4th at 373. Knowledge of general deficiencies that may cause harm is insufficient to show deliberate indifference. *See Doe ex rel. Magee*, 675 F.3d at 865-66. Instead, the state-created danger theory requires that a harm threatens a particular known victim. *See id.* at 866; *Lester v. City of Coll. Station*, 103 F. App'x 814, 815-16 (5th Cir. 2004) ("[E]ven if it is assumed that the state-created[ ]danger theory applies, liability exists only if the state actor *is aware of an immediate danger facing a known victim.*" (emphasis added) (citing *Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389, 392 (5th Cir. 1999))). Under this theory, a class of generally foreseeable victims is insufficient to establish liability. *See Doe ex rel. Magee*, 675 F.3d at 865-66; *Saenz*, 183 F.3d at 392.

Here, even if the Fifth Circuit recognized a state-created danger theory of liability, E.E. does not allege sufficient facts to support her claim. First, E.E. alleges that the swing set on

which she was injured had "fallen into obvious disrepair," that "seats were already broken and not used," and that "it was well-known by the staff and students that the swing set was defective." She also asserts that "no one contacted [the] Maintenance Staff," nor had the school "ensure[d] a reasonable inspection schedule" despite "everyone [knowing that] the swings were in disrepair." These allegations, however, are insufficient to set forth a claim under the state-created danger theory because they do not plausibly allege the BCISD affirmatively used its authority to create a dangerous environment. *See Piotrowski*, 237 F.3d at 585. Further, these allegations do not "demonstrate the existence of 'an immediate danger facing [E.E.]'" *Doe ex rel. Magee*, 675 F.3d at 866 (quoting *Saenz*, 183 F.3d at 392). While E.E. alleges that the swings were often used, "especially [by] children with disabilities," this does not allege the particularized harm needed to establish deliberate indifference. *See Doe ex rel. Magee*, 675 F.3d at 866; *Saenz*, 183 F.3d at 392 (holding that an action "increasing the risk of harm to unidentified and unidentifiable members of the public" is insufficient to establish a state-created danger).

At the most, E.E. alleges that BCISD knew the swing set was in disrepair, but she does not allege that the school affirmatively created a harmful environment or that it knew that there was an immediate danger to E.E. specifically. *See Doe ex rel. Magee*, 675 F.3d at 866. The court also cannot infer such knowledge from the pleadings. As such, even if the Fifth Circuit were to adopt the state-created danger theory, E.E. fails to state a claim under § 1983.

b. <u>Municipal Liability</u>

BCISD contends that E.E.'s § 1983 claim also fails under a theory of municipal liability. The court agrees. E.E. has failed to allege or otherwise point to a policy that BCISD adopted that violated her constitutional rights.

The Supreme Court of the United States has expressly held that local governmental entities, such as a school district, may be sued directly under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *see Lozman v. City of Riviera Beach*, 585 U.S. 87, 95 (2018); *R.W. v. Clear Creek Indep. Sch. Dist.*, No. 24-40141, 2025 WL 801360, at *3 (5th Cir. Mar. 13, 2025); *Griggs v. Chickasaw County*, 930 F.3d 696, 704 (5th Cir. 2019). A governmental entity may also be sued "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690-91; *Damond*, 127 F.4th at 938 (quoting *Collins v. City of Harker Heights*, 916 F.2d 284, 286 (5th Cir. 1990)); *Benfer*, 120 F.4th at 1286. The Fifth Circuit has defined an official policy or custom as:

> (1) A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> (2) A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)); *accord Damond*, 127 F.4th at 938 (quoting *Collins*, 916 F.2d at 286); *Jackson v. Valdez*, 852 F. App'x 129, 135 (5th Cir. 2021); *ODonnell v. Harris County*, 892 F.3d 147, 155 (5th Cir. 2018), *overruled on other grounds by Daves v. Dallas County*, 64 F.4th 616 (5th Cir. 2023).

"To establish municipal liability, a plaintiff must show '(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom).'" *Benfer*, 120 F.4th at 1285 (quoting *Newbury v. City of Windcrest*, 991 F.3d 672, 680 (5th Cir. 2021)); *Verastique v. City of Dallas*, 106 F.4th 427, 432 (5th Cir.) (quoting *Johnson v. Harris County*, 83 F.4th 941, 946 (5th Cir. 2023)), *cert. denied*, 145 S. Ct. 772 (2024); *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1011 (5th Cir. 2023) (quoting *Monell*, 436 U.S. at 694); *accord R.W.*, 2025 WL 801360, at *3; *Doe v. Burleson County*, 86 F.4th 172, 176 (5th Cir. 2023). Moreover, "each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff." *Piotrowski*, 237 F.3d at 579; *accord Benfer*, 120 F.4th at 1285-86; *Edwards v. City of Balch Springs*, 70 F.4th 302, 312 (5th Cir. 2023).

A "policy" can be demonstrated by three different methods. The first type of "policy" is characterized by formal rules and understandings which constitute fixed plans of action to be followed under similar circumstances consistently and over time. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986); *accord ODonnell*, 892 F.3d at 155 (citing *Jett*, 491 U.S. at 737); *Baker v. City of McKinney*, 624 F. Supp. 3d 668, 674 (E.D. Tex. 2022), *vacated on other grounds by* 84 F.4th 378 (5th Cir. 2023). The second type of "policy" arises from custom, *i.e.*, "conduct that has become a traditional way of carrying out policy and has acquired the force of law." *Bennett*, 728 F.2d at 768; *accord ODonnell*, 892 F.3d at 155; *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168-69 (5th Cir. 2010); *Baker*, 624 F. Supp. 3d at 674. A third type of "policy" stems from "a final decisionmaker's adoption of a course of action 'tailored to a particular situation and not intended to control decisions in later situations.'" *Bd. of Cnty.*

*Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 406 (1997) (quoting *Pembaur*, 475 U.S. at 481); *accord Garza v. City of Donna*, 922 F.3d 626, 637-38 (5th Cir. 2019); *Advanced Tech. Bldg. Sols., L.L.C. v. City of Jackson*, 817 F.3d 163, 165 (5th Cir. 2016).

At the 12(b)(6) stage, "a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997)); *accord Guillot on behalf of T.A.G. v. Russell*, 59 F.4th 743, 752 (5th Cir. 2023). BCISD asserts that the amended complaint is "devoid" of any factual allegations identifying any custom that was the "moving force" behind the alleged constitutional rights violations. The court agrees that E.E.'s amended complaint fails to include sufficient factual allegations that BCISD adopted an official policy or custom that authorizes or condones a violation of E.E.'s constitutional rights. *See Piotrowski*, 237 F.3d at 578-81.

E.E. vaguely references certain policies. She contends that the school board has "developed policies regarding discrimination based upon disability." She identifies: (1) the Equal Educational Opportunity policy; (2) the Building Grounds & Equipment Maintenance policy; and (3) the Facility Standards Safety and Security policy. The first policy specifies that students with disabilities will not be subject to discrimination. The latter two policies concern facility maintenance and inspection. While at this stage, the court cannot assess whether BCISD failed to comply with its maintenance policies, E.E. fails to allege facts demonstrating how any one of these three policies relates to the alleged constitutional violation or how any of these policies was a "moving force" behind the alleged constitutional violation. E.E. has provided no facts showing

that BCISD's policies caused E.E.'s injury or that allow the court to make any other inferences about BCISD's role in E.E.'s injury. Accordingly, E.E. fails to state a § 1983 claim under a municipal liability theory.

2. ADA and Section 504 Claims

BCISD also seeks to dismiss E.E.'s claims that BCISD discriminated against her under the ADA and Section 504. She asserts disparate treatment claims and failure to accommodate claims under both acts. The ADA and Section 504 are "judged under the same legal standards, and the same remedies are available under both [a]cts." *Valentine v. Collier*, 993 F.3d 270, 289 (5th Cir. 2021); *Harmon v. Collier*, 158 F.4th 595, 611 (5th Cir. 2025). The only material difference between the ADA and Section 504 lies in their respective causation requirements.[2] *J.W. v. Paley*, 81 F.4th 440, 449 (5th Cir. 2023); *S.B. on behalf of S.B. v. Jefferson Par. Sch. Bd.*, No. 22-30139, 2023 WL 3723625, at *3 (5th Cir. May 30, 2023) (quoting *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005)). Section 504 proscribes discrimination "solely by reason of" disability, whereas the ADA states that "discrimination need not be the sole reason" for the discrimination. *Bennett-Nelson*, 431 F.3d at 454. Therefore, the court will consider E.E.'s ADA and Section 504 claims together.

The ADA is a federal antidiscrimination statute designed to remove barriers which prevent qualified individuals with disabilities from enjoying the same opportunities that are available to individuals without a disability. *See* 42 U.S.C. §§ 12101-12113; *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674-75 (2001); *Clark v. Dep't of Pub. Safety*, 63 F.4th 466, 470 (5th Cir. 2023); 29 C.F.R. § 1630.1. The ADA was amended in 2008 by the ADA Amendments Act ("ADAAA"),

[2] Section 504 is applicable only to entities receiving federal funds. 29 U.S.C. § 794(a). Here, the parties do not dispute that E.E. has alleged that BCISD receives federal funds.

which "primarily focuses on broadening the definition of 'disability.'" *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013); *see* ADA Amendments Act, Pub. L. No. 110-325, 122 Stat. 3553 (2008) (codified as amended at 42 U.S.C. §§ 12101-12117); *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 578 n.15 (5th Cir. 2020) ("Congress expanded the definition of 'disability' and instructed courts to construe that definition 'broadly.'" (quoting *Patton v. eCardio Diagnostics LLC*, 793 F. Supp. 2d 964, 968 (S.D. Tex. 2011))).

Title II, sometimes referred to as the "Public Services" title of the ADA, provides: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *accord Lartigue v. Northside Indep. Sch. Dist.*, 100 F.4th 510, 513-14 (5th Cir. 2024) ("Title II of the ADA protects the rights of *all* individuals with disabilities, banning discrimination by public entities, including schools." (emphasis in original)). "Public entity," as used in the statute, includes any state or local government and any department, agency, or other instrumentality of a state or local government. *See* 42 U.S.C. § 12131(A)-(B).

Similarly, Section 504 provides: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 749.

To establish a prima facie case under Title II of the ADA or Section 504, a plaintiff must show:

(1) that [she] is a qualified individual . . . ;

> (2) that [she] is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and
>
> (3) that such exclusion, denial of benefits, or discrimination is by reason of [her] disability.

*J.W.*, 81 F.4th at 449 (quoting *T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 417 (5th Cir. 2021)). "A plaintiff need not identify an official policy to sustain such a claim, and a public entity may be held vicariously liable for the acts of its employees under [the ADA and Section 504]." *T.O.*, 2 F.4th at 417; *accord J.W.*, 81 F.4th at 449. "Evidence of intentional discrimination is necessary to support a claim for monetary damages, but a plaintiff seeking only equitable relief may succeed on a disparate impact theory." *T.O.*, 2 F.4th at 417; *accord J.W.*, 81 F.4th at 449-50 ("Plaintiffs can only recover damages under the ADA or [Section] 504 upon a showing of intentional discrimination."); *Harrison v. Klein Indep. Sch. Dist.*, 856 F. App'x 480, 483 (5th Cir. 2021).

a. Disparate Treatment Claims

Turning first to E.E.'s disparate treatment claims, BCISD contends that E.E.'s amended complaint "contains no factual allegations that E.E. was excluded from any program, denied any benefit, or treated differently from similarly situated non-disabled students." The court agrees. E.E. has not adequately pleaded facts to state a disparate treatment claim under the ADA or Section 504.

A plaintiff raises a disparate treatment claim by alleging she was treated less favorably than others because of a protected characteristic. Here, because E.E. seeks compensatory damages,

she must also allege facts showing intentional discrimination.[3] In a disparate treatment claim, intentional discrimination can be shown by alleging that the defendant had a discriminatory motive. *Clark v. Whitehouse Indep. Sch. Dist.*, No. 6:25-CV-161-KNM, 2026 WL 1096573, at *7 (E.D. Tex. Jan. 16, 2026) (citing *J.W.*, 81 F.4th 440, 44950), *adopted by* No. 6:25-CV-161-JDK-KNM, 2026 WL 788865 (E.D. Tex. Mar. 20, 2026). For such a claim to survive Rule 12(b)(6) review, a plaintiff must plausibly allege the disparate treatment was "motivated by" or "by reason of" the plaintiff's disability. *S.B. on behalf of S.B.*, 2023 WL 3723625, at *4.

Here, the parties do not dispute that E.E. has alleged that she is a qualified individual. In her amended complaint, E.E. asserts the swing set was an accommodation for her ADHD and autism, she used it regularly, and it was in a state of disrepair. Nowhere in her amended complaint, however, does E.E. allege that she was treated differently than non-disabled students or subjected to discriminatory treatment due to her disability. Any facts pointing to discriminatory treatment, action, or motive are notably absent from her amended complaint. *See Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1034 (5th Cir. 2022); *S.B. on behalf of S.B.*, 2023 WL 3723625, at *3-4; *T.O.*, 2 F.4th at 417. To the extent that E.E. seeks compensatory damages, she has not stated facts showing that BCISD had a discriminatory motive.

At the end of her amended complaint, E.E. generally requests any equitable relief available to her. To the extent that E.E. seeks such relief, she fails to state a disparate treatment claim

[3] In *A.J.T. by and through A.T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, the Supreme Court held a plaintiff need not satisfy a heightened showing of bad faith or gross misjudgment in an education disability discrimination claim. 605 U.S. 335, 351 (2025). Instead, these claims are "subject to the same standards that apply in other disability discrimination contexts." *Id.* Thus, students seeking compensatory damages based on educational services are subject to the same standard for pleading intentional discrimination as any other qualified individual.

under the ADA and Section 504 because she has not set forth any facts indicating that she was treated differently because of her disability.

b. Failure to Accommodate Claims

Finally, BCISD contends that E.E.'s amended complaint "fails to identify . . . any accommodations or modifications [BCISD] refused to provide." The court agrees that E.E. has not adequately pleaded facts to state a failure to accommodate claim under the ADA or Section 504.

To state a claim based on a school district's failure to make reasonable accommodations for a disability, "[t]he complaint must allege facts sufficient to plausibly claim 'that the school district . . . refused to provide reasonable accommodations for [the student] to receive the full benefits of the school program.'" *Bryant v. Dayton Indep. Sch. Dist.*, No. H-21-1547, 2021 WL 3555947, at *7 (S.D. Tex. August 11, 2021). To do so, the plaintiff must allege facts that: (1) she is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the defendant; and (3) the defendant failed to make reasonable accommodations. *Clark*, 2026 WL 1096573, at *7.

Further, to recover compensatory damages under a failure to accommodate claim, the plaintiff must show that there was intentional discrimination. To do so, she must show that the defendant had "actual knowledge that [the] accommodation [was] necessary." *Id.* (citing *Smith v. Harris County*, 956 F.3d 311, 319 (5th Cir. 2020)); *accord J.W.*, 81 F.4th at 450. Allegations that leave open the possibility of "negligence or inadvertence as sources of error" are insufficient to state a claim of intentional discrimination. *See Davis v. Biggers*, No. CIV.A. H-12-1173, 2013

WL 5703616, at *6 (S.D. Tex. Oct. 17, 2013) (quoting *Carter v. Orleans Par. Pub. Sch.*, 725 F.2d 261, 264 (5th Cir. 1984)).

Here, the amended complaint alleges that E.E. is a qualified individual. It does not allege, however, that E.E. sought or was denied any accommodation from BCISD. It also does not allege that the disability was known to BCISD. E.E.'s amended complaint states no facts suggesting the nature or scope of her disability, any resulting limitations, or that necessary accommodations for her disability were "open, obvious, and apparent" to BCISD. *See Clark*, 2026 WL 1096573, at *7. Nor does E.E.'s amended complaint set forth any facts showing that she requested an accommodation. Instead, it appears that E.E. had full access to the playground equipment installed on the school campus, to the same extent as non-disabled students, and that she never voiced any need for special accommodations in using such equipment.

In her response, E.E. contends her disability was open and obvious.[4] Yet, in her amended complaint, E.E. alleges no facts showing that BCISD knew of her disabilities or resulting limitations. Even if E.E. had alleged facts in her amended complaint indicating that her disabilities and limitations were known, she fails to allege that BCISD knew of her need for an

[4] Generally, the court may not look beyond the four corners of the plaintiff's pleadings. *See King v. Baylor Univ.*, 46 F.4th 344, 356 (5th Cir. 2022); *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). A factual assertion or theory of liability not set forth in the complaint is not properly before the court on a motion to dismiss. *See Law v. Ocwen Loan Servicing, L.L.C.*, 587 F. App'x 790, 793 n.2 (5th Cir. 2014); *Vandelay Hosp. Grp. LP v. Cincinnati Ins. Co.*, No. 3:20-CV-1348-D, 2020 WL 5946863, at *1 n.3 (N.D. Tex. Oct. 7, 2020) ("This court has repeatedly held that, when ruling on a motion to dismiss, the court does not consider additional facts that are alleged in a response brief but not in the complaint." (collecting cases)). While E.E.'s response contains factual allegations regarding the Special Education Plan BCISD provided to address her disabilities and limitations, these facts are absent from the complaint. Therefore, the court will not consider them in deciding this motion.

Further, E.E.'s response requests that the court take judicial notice of two case files, one from the State Office of Administrative Hearings and the other from the Texas Education Agency. A court "may take judicial notice on its own; or must take judicial notice if a party requests it and the court is supplied with the necessary information." FED. R. EVID. 201(c)(1),(2). This discretion to examine material beyond the pleadings should only be exercised sparingly. *Willie v. Cont'l Cas. Co.*, No. 1:23-CV-369, 2025 WL

accommodation or that it denied an accommodation request with discriminatory motive. *See J.W.*, 81 F.4th at 450 (stating that knowledge of a disability and knowledge of the resulting necessary accommodation are "certainly different").

E.E. also asserts that the swing set was an accommodation. Her allegations that the swing set fell into disrepair and the district failed to maintain it, however, cannot give rise to a failure to accommodate claim, which requires a showing that BCISD "failed to make reasonable accommodations." *See Clark*, 2026 WL 1096573, at *7. At most, these allegations suggest that BCISD's actions were the product of "negligence or inadvertence," foreclosing E.E.'s claim that BCISD's actions or inactions were the result of intentional discrimination. *See Davis*, 2013 WL 5703616, at *6; *accord Clark*, 2026 WL 1096573, at *10 (requiring intentional discrimination to recover compensatory damages).

Therefore, E.E. fails to plead her failure to accommodate claims properly under the ADA and Section 504 because she does not allege that she requested an accommodation, that BCISD knew about her need for an accommodation, and that it failed to accommodate her. As to her request for compensatory damages, E.E. again fails to allege facts demonstrating intentional discrimination.

---

2724389, at *4 n.3 (E.D. Tex. Sept. 23, 2025). Thus, courts decline to consider documents beyond the pleadings where the proponent of the documents has failed to explain how taking judicial notice would assist the court in deciding the motion to dismiss. *See Hill v. Turknett*, No. 3:19-CV-2871-K, 2020 WL 3872743, at *3 (N.D. Tex. July 9, 2020) ("Plaintiff fails to establish why the [c]ourt can or should go outside the pleadings to consider [the files the plaintiff is requesting that the court take judicial notice of] in deciding this motion to dismiss."); *Ambler v. Williamson County*, No. 1-20-CV-1068-LY, 2021 WL 769667, at *5 (W.D. Tex. Feb. 25, 2021).

In the present case, E.E. fails to describe how the files contain adjudicative facts that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201. She has not explained why the court can or should consider matters outside the pleadings in deciding BCISD's motion to dismiss. Accordingly, the court declines to take judicial notice of them at this juncture.

C. Leave to Amend

Generally, however, a court should not dismiss an action for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend. *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (a plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibly result in dismissal of the complaint with prejudice to refiling); *accord Strickland v. Bank of N.Y. Mellon*, 838 F. App'x 815, 821 (5th Cir. 2020); *Young v. U.S. Postal Serv. ex rel. Donahoe*, 620 F. App'x 241, 245 (5th Cir. 2015); *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003). A district court may, however, deny leave "for a substantial reason, such as undue delay, repeated failures to cure deficiencies, undue prejudice, or futility." *Residents of Gordon Plaza, Inc. v. Cantrell*, 25 F.4th 288, 302-03 (5th Cir. 2022) (quoting *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 575 (5th Cir. 2021)).

"Whether leave to amend should be granted is entrusted to the sound discretion of the district court, and that court's ruling is reversible only for an abuse of discretion." *Residents of Gordon Plaza, Inc.*, 25 F.4th at 302 (holding that the district court did not abuse its discretion in denying leave to amend based on plaintiff's repeated failure to cure its pleadings and lack of diligence to present any indication of the factual allegations with which it sought to amend) (quoting *Heinze*, 971 F.3d at 485); *accord Aldridge v. Miss. Dep't of Corr.*, 990 F.3d 868, 878 (5th Cir. 2021); *United States ex rel. Porter v. Magnolia Health Plan, Inc.*, 810 F. App'x 237, 243 (5th Cir. 2020); *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). Federal Rule of Civil Procedure 15(a) "requires a trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Marucci Sports, L.L.C.*, 751 F.3d at 378 (quoting *Jones v. Robinson Prop. Grp., LP*, 427 F.3d

987, 994 (5th Cir. 2005)); *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009) ("[T]here is a strong presumption in favor of granting leave to amend[.]"); *accord Magnolia Health Plan, Inc.*, 810 F. App'x at 243. A district court may, however, refuse leave to amend if the complaint as amended would be subject to dismissal. *Anokwuru v. City of Houston*, 990 F.3d 956, 966 (5th Cir. 2021) (quoting *Marucci Sports, L.L.C.*, 751 F.3d at 378), *abrogated on other grounds by Guerra v. Castillo*, 82 F.4th 278 (5th Cir. 2023); *Brown v. Tarrant County*, 985 F.3d 489, 498 (5th Cir. 2021); *Davis v. City of Alvarado*, 835 F. App'x 714, 719 (5th Cir. 2020); *see Yee v. Baldwin-Price*, 325 F. App'x 375, 380 (5th Cir. 2009) ("Leave to amend properly may be denied on the basis of futility.").

Here, E.E. seeks an opportunity to amend her complaint once again to cure any defects. As to E.E.'s § 1983 claim and disparate treatment claims, amendment appears to be unavailing in this situation. She has been afforded an opportunity to rectify any pleading defects and sets forth no additional facts or viable theories she intends to plead if leave to amend were granted as to these claims. *See U.S. ex rel Adrian v. Regents of Univ. of Cal.*, 363 F.3d 389, 404 (5th Cir. 2004) (opining that the district court did not abuse its discretion by denying leave to amend where the plaintiff did not indicate "what additional facts [she] could plead that would correct the deficiencies in [her] previous complaints"). Therefore, the court finds that additional amendment or revisions to replead these claims would be an ineffective use of the court's resources, would cause unnecessary delay, and would be futile. At this juncture, E.E. has pleaded her best possible § 1983 and disparate treatment claims. Accordingly, E.E.'s § 1983 and disparate treatment claims will be dismissed.

E.E., however, raises additional facts in her response that indicate further amendment or revision to the First Amended Complaint may help cure certain defects as to her failure to accommodate claims. Therefore, E.E. may amend her pleadings to allege specific facts bearing on her failure to accommodate claims alleged against BCISD. If E.E. fails to amend her complaint within 28 days from the date of this order, her claims will be dismissed in their entirety, with prejudice. This will be E.E.'s second opportunity to amend her complaint; the court does not foresee granting a third.

## III. Conclusion

Accordingly, BCISD's Motion to Dismiss is GRANTED as to E.E.'s § 1983 and disparate treatment claims. As to these claims, E.E. fails to state a claim upon which relief can be granted, as she has not pleaded a plausible claim for relief "that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Therefore, E.E.'s § 1983 and disparate treatment claims against BCISD are DISMISSED.

BCISD's Motion to Dismiss is CONDITIONALLY GRANTED as to E.E.'s failure to accommodate claims. E.E. shall have 28 days from the date of this order to file an amended complaint addressing only her failure to accommodate claims. If E.E. fails to amend her complaint, this action will be dismissed in its entirety.

SIGNED at Beaumont, Texas, this 18th day of November, 2026.

Marcia A. Crone

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE